*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LOGAN BENJAMIN GARNER SPECIAL
NEEDS TRUST.

---

KEYBANK NATIONAL ASSOCIATION,

        Appellant,

v

BARBARA BAKEROMEROD, Successor Trustee,

        Appellee.

UNPUBLISHED
May 5, 2022

No. 356824
Shiawassee Probate Court
LC No. 13-035924-TT

---

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Appellant, KeyBank National Association, appeals as of right the probate court order removing it as trustee and appointing appellee, Barbara BakerOmerod, as successor trustee. For the reasons stated in this opinion, we affirm the court's order removing KeyBank as trustee. However, because the court abused its discretion by appointing BakerOmerod as successor trustee, we vacate that order and remand for further proceedings.

## I. BASIC FACTS

On March 5, 2008, the Logan Benjamin Garner Special Needs Trust[1] was established for the benefit of Logan Benjamin Garner. The Trust was funded with the proceeds of a settlement obtained for Logan's benefit as a result of injuries he sustained at the hospital in the days after his birth. The sole purpose of the Trust is to provide for Logan's "lifelong care." KeyBank was

---

[1] The Trust was originally entitled the Logan Benjamin Vankuren Special Needs Trust; however, it was reformed in 2013 after Logan's stepfather legally adopted Logan.

selected by Logan's family to serve as the trustee. Initially, the Trust proceedings took place in Washtenaw County, but in 2013, the venue for the Trust was moved to Shiawassee County.

The probate court in Shiawassee County approved the 6th through 10th annual accounts without issue. However, at the hearing on the petition to approve the 11th annual account, the probate court raised questions concerning the attorney fees and fiduciary fees that KeyBank charged to the Trust. The accounting indicated that the trust had gained $29,892.78 in income, had incurred $41,313.19 in expenses, and had a remaining balance of $810,995.85. The court was concerned that the attorney fees of $1,117 and the fiduciary fees of $15,511.53 seemed high in relation to the size of the Trust. Because the lawyer for KeyBank could not explain the basis for the fiduciary fees, the court adjourned the hearing. When the hearing resumed, KeyBank's lawyer assured the probate court that the bank was not "double dipping" by investing in its own products, noted that a trust officer regularly discussed the trust with the Garner family, and stressed that the Garners were "extremely happy" with KeyBank's performance. The court stated that it would approve the accounting, but cautioned that it would be "keeping a close eye" on the matter because it was "really not convinced that you're getting the best value for Logan's money in terms of paying a law firm" and "[p]aying significant fiduciary fees." The court added that it had experience with cases where large institutions abused trust funds and stated that it intended to watch Logan's "money like it was mine."

On April 13, 2020, KeyBank filed its 12th annual petition to allow accounts. The accounting indicated that the Trust had gained $55,507.94, had incurred $97,933.80 in expenses, and had a remaining balance of $768,569.99. This time the attorney fees and costs were $6,3554.63 and the fiduciary fees and expenses were $14,955.50. At the hearing on the petition, the court asked "what the bank did for Fifteen Thousand Dollars." KeyBank's lawyer stated that KeyBank provided "a myriad of services," but the court did not allow further elaboration. Instead, the court suggested that KeyBank and the law firm involved saw a "big pot" and had decided to "just skim a little cream off of it and call it good." It suggested that KeyBank was using the Trust's money to invest in its own products, but also stated that there was "nothing that suggests that this Trustee management fee for money sitting in their bank is justified at all." The court, therefore, did not allow the accounting and set an evidentiary hearing.

At the evidentiary hearing, KeyBank's lawyer again assured the court that KeyBank was not double dipping. She explained that the fiduciary fees were governed by a presumptively reasonable fee schedule. Nevertheless, the court noted that it did not care that the fees were presumptively reasonable. Instead, it stated:

> This is a court that requires each and every Ward, that gentleman right there in the red and white shirt [referring to Logan] is my priority in this case and that is whom I am protecting and not a presumptive right of the bank to take a cookie cutter fee whether or not they double dipped on it or not. Okay? I—I just don't see competent performance by what this bank has been doing on this gentleman's behalf.

The court adjourned the case and appointed a guardian ad litem (GAL) to offer "an opinion on the reasonableness of the fees charged by the banks, by the lawyers, and the distribution of money."

-2-

On October 19, 2020, the GAL submitted a report to the court. The report stated that KeyBank's "annual fees for administration of irrevocable trusts accounts is at the rate of 1.55%," that this rate was "slightly higher than most rates charged by financial institutions to act as Trustee," but that the fees were not "excessive or unreasonable." But the report also stated that KeyBank was charging fees for the Garners' home, that "the 1.55% rate should not apply to the home," and that "it would be reasonable to charge an hourly rate to maintain the home." The report stated that attorney fees were charged at rates of $395 and hour and $275 an hour; that $395 was "excessive" while $275 was reasonable; that the paralegal fees of $190 per hour were excessive; and that travel time should be billed at $100 per hour instead of the usual hourly rate. Finally, the report stated that KeyBank "allowed excessive 'wants' rather than 'needs' as expenditures to Logan."[2] Overall, the report recommended that "the court consider modification of the Trustee of the Trust."

On February 17, 2021, the court held another evidentiary hearing. Relevant to the issues raised on appeal, Roseann Reed, a trust officer employed by KeyBank, explained that KeyBank's fees were charged pursuant to a flat rate that was determined by the size of the trust. Logan's father testified that the family was pleased with KeyBank's work as trustee and that the trust was more valuable than it was at its inception.

The court stated that it was not concerned with the family's happiness with KeyBank's performance. Instead, the court questioned whether the fees, which were standard for KeyBank, were reasonable for the Trust. The Court reiterated its concern that "this particular Trust" cannot afford KeyBank as a trustee. The court reasoned:

> You know, the—the price of that new Mercedes convertible is reasonable. I just can't afford it. Okay. That's the—the issue here that—that, respectfully, nobody seems to get on behalf of KeyBank. . . .
>
> I'm not saying the bank's fees are unreasonable. I'm saying *this Trust cannot afford you.* Can't afford a Four Hundred Dollar an hour lawyer. It can't afford a bank that charges a flat rate regardless. And in excess, in—in the area of what they're charging. There's just too many other options to make their money last longer. [Emphasis added.]

Ultimately, the court found:

> I can't see the justification in paying what you're paying to deal with niceties and friendly people. And, who—who do their job as best as they can. But, it's—it's just, you know, it's a matter of being affordable. And I'm just not seeing it.
>
> I'm going to—I'm going to approve the 12th Accounting and I'm not going to redact anything as it stands. But, I do, I find that well the cost, what, and I wanna

---

[2] Although there was testimony on this issue at the evidentiary hearing, the trial court did not ultimately find that any of the distributions were improper.

be clear on this . . . . The cost that they charge I have no reason to find that they're not reasonable. But I find they're not affordable. Okay. So that's key to this.

*  *  *

KeyBank, while their structure is—is reasonable, it's—it's just not affordable in this case. And, so that is it.

On March 19, 2021, the court entered an order allowing the 12th annual account, removing KeyBank from its role as trustee, and appointing BakerOmerod to serve as successor trustee. This appeal follows.

## II. DISCUSSION

### A. STANDARD OF REVIEW

KeyBank argues that the trial court abused its discretion by removing KeyBank as trustee and appointing BakerOmerod as successor trustee. This Court reviews for an abuse of discretion the probate court's decision to remove a trustee. *In re Duane v Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. at 397.

### B. ANALYSIS

### 1. REMOVAL OF TRUSTEE

The circumstances under which a trustee can be removed from office are set forth in MCL 700.7706, which provides:

(1) The settlor, a cotrustee, or a qualified trust beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative.

(2) The court may remove a trustee if 1 or more of the following occur:

(a) The trustee commits a serious breach of trust.

(b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

(c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

(d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

KeyBank argues that the probate court abused its discretion by removing KeyBank as trustee because instead of citing any of the statutory grounds identified in MCL 700.7706(2), the court made the erroneous finding that KeyBank was "just not affordable in this case." We disagree.

Although the court did not expressly identify any of the statutory grounds for removal identified in MCL 700.7706(2), examining the entirety of its reasoning, it is apparent that the removal was pursuant to MCL 700.7706(2)(c). Under that subsection, the court may remove a trustee if, "because of . . . persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust."

Here, based on the GAL report, there is a basis to conclude that some of the attorney fees and paralegal fees were excessive, at least with respect to the size and nature of this trust. The trustee's decision to hire a law firm that charged an excessive fee does not amount to the effective administration of the Trust. Next, as repeatedly recognized by the trial court, the Trust had relatively modest assets. By paying a large fiduciary fee and overall excessive attorney fees, the court reasoned that the Trust's assets would be depleted prematurely. Thus, although KeyBank's fiduciary fees were reasonable, they were not, as the court noted, reasonable for the Trust at issue, i.e., the Logan Benjamin Garner Special Needs Trust. That finding was supported by the record, which indicates that the Trust's expenditures (including fiduciary fees, attorney fees, and distributions) was persistently exceeding its gains. The Trust expressly provides: "The SOLE purpose of this Trust is to provide for the greatest degree of security for LOGAN and to preserve and enhance the assets of this Trust in order to provide for LOGAN'S *lifelong care*." (Emphasis added). Because the Trust was expected to provide for Logan for the duration of his life, exhausting the Trust early would not serve the best interest of the Trust. Accordingly, although poorly worded,[3] we do not find it to be an abuse of discretion, that the court removed KeyBank as trustee of the Trust based on the fact that it was not affordable for the rather modest Trust to maintain such an expensive—albeit experienced—trustee.

## 2. APPOINTMENT OF SUCCESSOR TRUSTEE

KeyBank next argues that the trial court abused its discretion by appointing BakerOmerod to serve as successor trustee because it did not comply with MCL 700.7704(3). We agree.

MCL 700.7704(1)(d) provides that a vacancy in a trusteeship occurs if "[a] trustee is disqualified or removed." Because KeyBank was removed as trustee, there was a vacancy in the trusteeship. In turn, MCL 700.7704(3) provides:

> (3) If a vacancy in a trusteeship of a noncharitable trust is to be filled, the vacancy must be filled in the following order of priority:
>
> (a) In the manner designated by the terms of the trust.

---

[3] Many of the court's oral pronouncements were not only poorly worded, but were unnecessarily disparaging of both KeyBank and the law firm hired to represent KeyBank. We caution the court to avoid such intemperate language in the future.

(b) By a person appointed by the court.

The Trust expressly addresses the procedure to be used when appointing a successor trustee. It provides:

> If KEY BANK NATIONAL ASSOCIATION becomes unable or unwilling to serve as Trustee hereunder, the successor Trustee shall be that person or organization designated in writing by LEARA GARNER in her capacity as Trust Advisor . . . . If LEARA GARNER fails to designate a successor Trustee within 30 days of a vacancy in the trusteeship, then any person interested in the welfare of LOGAN may petition a court of competent jurisdiction to appoint a successor trustee.

Here, on March 19, 2021, the court entered a written order that both removed KeyBank as trustee and appointed BakerOmerod as successor trustee. Therefore, contrary to the terms of the Trust, the court failed to give Leara Garner a 30-day period to designate a successor trustee. Because the court was required to fill the vacancy in the manner designated by the Trust, and because its order did not do so, the court abused its discretion in appointing BakerOmerod as successor trustee. Consequently, we vacate the order appointing BakerOmerod and remand for the court to fill the vacancy in the trust in the manner designated in the Trust.

Affirmed in part and vacated and remanded in part. No taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle

-6-